UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**CHARLOTTE ELAINE WHISENANT,**

      **Plaintiff,**

v.                                                    Case No. 8:09-cv-931-T-23TBM

**MICHAEL J. ASTRUE,**
**Commissioner of the United States**
**Social Security Administration,**

      **Defendant.**
                                       /

**REPORT AND RECOMMENDATION**

      The Plaintiff seeks judicial review of the denial of her claim for Social Security disability benefits and Supplemental Security Income payments. Because the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, I recommend that it be affirmed.

I.

      Plaintiff was forty (40) years of age at the time of her administrative hearing on remand in February 2007. She stands five feet, nine inches tall and at various times has weighed from 135 to 220 pounds. Plaintiff has twelve years of schooling with additional training driving a bus and cutting hair. Her reported past relevant work was as a school bus driver and rider, teacher's aide, hair stylist, office manager, pharmacy clerk, and cashier.

Plaintiff applied for disability benefits and Supplemental Security Income in January 2002, alleging disability as of October 16, 2000, by reason of pseudotumor cerebri, vasospasm, headaches, pain, asthma, history of TIAs (transient ischemic attacks), reflux, and anemia. Plaintiff's applications were denied originally and on reconsideration.[1]

The Plaintiff, at her request, then received a *de novo* hearing before an Administrative Law Judge (hereinafter "ALJ") in October 2003. The Plaintiff was represented at the hearing by counsel and testified in her own behalf.[2] Additionally, a vocational expert was called by the ALJ. In essence, Plaintiff claimed that she quit her last work driving a school bus when she got sharp pains in her head and she could not function. As she describes this, she could not speak or see well, think to drive, she got dizzy, and could not concentrate. She was hospitalized and thought to have had TIAs, but it was decided that she had pseudotumor cerebri, which she describes as too much spinal fluid, and hemiplegic migraines. She experienced tingling in her extremities, and paralysis on her left side. She claimed the pressure in the back of her head from the pseudotumor was a daily occurrence all day long and her migraines happened a couple times a day. She claimed to experience ten days each month when she was wholly incapacitated. Medication has not helped with the pressure. Plaintiff estimated that she has had about 11 spinal taps to help relieve pressure.

---

[1]As reflected in the file and noted in the decision and the briefs, Plaintiff's initial administrative hearing was conducted on October 7, 2003. The ALJ subsequently entered a decision denying her relief. (R. 1465-75). In July 2006, the Appeals Council vacated the decision and remanded the case for a new hearing. (R. 1509-11). Plaintiff has filed other applications prior to and after the January 2002 applications.

[2]It appears that Plaintiff kept a journal which is now part of the record. According to Plaintiff, the log had been requested by her doctor. *See* (R. 180-1021).

She was going to the hospital once or twice a month because of pain. At the time, Plaintiff was taking morphine twice daily and oxycodone a couple times a day for pain. These medications did not fully relieve the pain. In addition to her pain medication, Plaintiff was taking Diamox, Lamictal, Plavix, Protonix, and Albuteral. Side effects included drowsiness, headaches, dizziness and dry mouth.

She claimed to sleep/nap multiple times a day. Sometimes her family helped with her personal care. She did some household chores but her family did them as well. She attended a social club when she could and liked to do crafts for about 15 to 20 minutes when she could. She had a CDL license but drove only short distances to the doctor or store. Walking was limited to 10 to 15 minutes and then she would have to sit because of dizziness. Standing also makes her dizzy. She can bend and kneel if careful. She gets uncomfortable sitting and has to lie down. She has asthma and shortness of breath. She could lift only five pounds. Use of her arms and hands was limited. Mostly she sleeps during the day. (R. 2055-73).[3]

At the hearing on remand in February 2007, Plaintiff was again represented by counsel. In addition to Plaintiff's testimony, the ALJ took testimony from a different vocational expert. Plaintiff testified that she had attempted to work as a hair stylist since the prior hearing but could not do the work. Plaintiff again identified her pseudotumor cerebri and hemiplegic migraines as affecting her on a daily basis, along with back pain. She has pressure in her head and she gets left-sided numbness and tingling. She was taking Morphine,

---

[3]The ALJ also took testimony from Plaintiff's husband (R. 2073-78) and a vocational expert (R. 2078-82).

3

Topamax, Lamictal, Singulair, Plavix, Prilosec, and uses a nebulizer and albuterol to help with her breathing. The medications make her drowsy, affect her concentration and focus, and cause dry mouth. She denied having a problem with the narcotic medication but she indicated she was trying to use ibuprofen more than the morphine. She still suffers headaches daily all day long. Once a week, they are so bad they bring tears to her eyes. She has had to visit the emergency room for pain 10 to 20 times since the last hearing. Even with medication, her pain it at a level 7 or 8 on a scale of 1 to 10, with ten being the greatest pain. She also claimed pain which travels down her legs. This causes her to stumble, and she has run into walls on occasion. She has used biofeedback, exercise, and medications to help relieve her pain.

On a typical day, she lies down for most of the day. Reclining is her most comfortable position. She stays tired most of the time and she naps daily. She tries to clean and cook but can only do so for 5 to 15 minutes and then she has to relax for an hour or so. Her mom helps do the household chores. She gets dizzy a couple times a week and she has blurred vision daily. She tries to visit friends once a month. She has trouble with her memory and she forgets a lot. She can drive and she drove herself to the hearing. (R. 2086-99).

Next, the ALJ took testimony from Gerald Wili, a vocational expert ("VE"). After classifying Plaintiff's past work as ranging from light to medium semi-skilled work, the VE testified on a hypothetical assuming a person of Plaintiff's age, education, and work experience capable of medium exertional work, with occasional limitation for concentrating on tasks assigned, interacting with the public, and coping with work stress, but capable of performing routine repetitive tasks in an air conditioned environment with limited

environmental pollutants. On this hypothetical, the VE opined that if Plaintiff could frequently interact with the public she could do all of her past light work, that is, teacher's aide, hairstylist, pharmacy clerk, and cashier checker. She also could perform medium jobs such as kitchen helper, dietary aide, and dining room attendant. If such individual needed unscheduled breaks up to four per day for 5 to 10 minutes or more, such would not typically be tolerated and would preclude work. If such person needed to lie down during the day for 30 minutes other than at lunchtime, such too would not be tolerated. Absenteeism of more than two days a month would also be unacceptable. Finally, if such person could not focus to do repetitive tasks then none of these jobs would be available. (R. 2099-2105).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are not set out herein in detail.

By his decision of March 16, 2007, the ALJ determined that while Plaintiff has severe impairments related to gastroesophageal reflux, asthma, headaches, a possible pseudotumor, left sided weakness, chest, neck, and back pain, and an adjustment disorder, she nonetheless had the residual functional capacity to perform a restricted range of medium exertional work. Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could perform her past work as well as other jobs available to her in the local and national economy. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 22-34). The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

II.

In order to be entitled to Social Security disability benefits and Supplemental Security Income payments, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that she has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw

6

inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

III.

The Plaintiff raises two claims on this appeal. As stated by the Plaintiff, they are as follows:

(1) The ALJ erred by not fully eliciting testimony from the witness in defiance of the Appeals Council Remand Order; and

(2) The ALJ erred by not ordering a consultative examination in defiance of the Appeals Council Remand Order.

In support of these claims, Plaintiff cites to the July 14, 2006, Appeals Council Order vacating the January 30, 2004, decision and ordering further development of the record. (R. 1508-11). More particularly, Plaintiff notes that the Appeals Council directed further development of the Plaintiff's impairments including any mental impairments. Plaintiff

complains that contrary to that directive, the ALJ failed to further develop the record regarding Plaintiff's mental condition and failed to ask specifically about atypical depression and somatoform disorder. Counsel concedes that he was present at the hearing and that he too failed to ask any such questions, but he urges that the case must be remanded for the ALJ's direct defiance of the Appeals Council's order and the failure to fully develop the record. By her second claim, Plaintiff notes that she had extensive medical testing to determine the source of her headaches and pain. Much of that record was inconclusive or inconsistent, as pointed out by the ALJ. The Appeals Council's order had suggested that additional evidence, including a consultative mental status examination, might be appropriate. Nevertheless, no such additional consultative mental examination was obtained. Because the ALJ failed to order a new consultative examination and question Plaintiff about her mental state, a remand is required. (Doc. 14 at 3-7).

In response, the Commissioner urges that while the ALJ has a basic obligation to develop a full and fair record, it is the Plaintiff who bears the burden of proving her disability. Here, the Commissioner argues that the ALJ fully complied with the remand order, carefully considering the lengthy medical record including mental consultative examinations by Dr. Batra in March 2001, Dr. Walker in 2002, and Dr. Yokum in June 2002, as well as the state agency doctor's assessment of those records and conclusion that Plaintiff did not suffer a severe mental impairment and suffered only mild limitations due to her adjustment disorder and depressed mood. In light of the substantial evidence available to the ALJ on remand, an additional consultative examination was not required and Plaintiff fails to demonstrate otherwise. As the decision reflects, the ALJ credited Plaintiff with a severe adjustment

disorder which resulted in occasional difficulties in maintaining social functioning, concentration, persistence, or pace. Additionally, he included functional limitations in his questioning of the VE. Plaintiff fails to demonstrate any prejudice in this or in the absence of another consultative evaluation and thus no remand is required. Finally, the Commissioner notes that the record does not reveal that Plaintiff ever sought mental health treatment on her own and in any event, her attorney made no complaints about the factual development at the hearing nor did counsel request that the ALJ order up another consultative examination. (Doc. 15 at 5-11). Largely for the reasons set forth by the Commissioner, I conclude Plaintiff is not entitled to relief under these claims.

At the outset, it is worth noting that the issues here raised were never presented to the ALJ. In this Circuit, the general rule is that "[a]n argument not raised in an administrative hearing cannot be raised on appeal." *See Alacare Home Health Servs., Inc. v. Sullivan*, 891 F.2d 850, 855 n. 5 (11th Cir. 1990) (citing *United States v. Tucker Truck Lines*, 344 U.S. 33, 35-36 (1952)); *see also Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999) (holding that, "at least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal"); *cf. Sims v. Apfel*, 530 U.S. 103, 105-07 (2000) (holding that a claimant does not waive judicial review of an issue by failing to raise it before the Appeals Council, but explicitly stating that whether a claimant must exhaust issues before the ALJ was not before it). As the record reflects, counsel on this appeal represented Plaintiff at both administrative hearings and was afforded a full and fair opportunity to present whatever evidence he wished on his client's behalf. At neither hearing did Plaintiff urge that she could not work by reason of her mental state. In any event, at

9

neither hearing did counsel seek to develop Plaintiff's mental limitations generally or by particular reference to an alleged diagnoses for atypical depression or somatoform disorder. Furthermore, counsel made no complaints to the ALJ about the adequacy of the mental health record to permit a final decision related to Plaintiff's mental impairments. Nor did counsel request that another consultative evaluation be performed nor suggest such was necessary for an informed decision. Only after the decision was rendered did Plaintiff complain to the Appeals Council. Thus, it is questionable that Plaintiff may even raise the claims in this court. However, it appears that counsel did raise these complaints before the Appeals Council on the request for review of the second adverse decision. Assuming that such is sufficient to require this court's consideration, Plaintiff still loses on the merits of her claims.

As noted, Plaintiff raises these claims in the context of a breach of the ALJ's failure to develop an adequate record. It is well-settled that the ALJ has a basic duty to develop a full and fair record. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). This obligation exists whether or not the claimant is represented by counsel. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). In light of this obligation, an ALJ must order a consultative examination when "such an evaluation is necessary for him to make an informed decision." *Holladay v. Bowen*, 848 F.2d 1206, 1209 (11th Cir. 1988) (quoting *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984)); *see also Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999). Nonetheless, it is the claimant's burden of proving that she is disabled and she is responsible for producing evidence in support of her claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.912(a), (c)). Furthermore, case law in this Circuit requires the Plaintiff to show some

prejudice before a remand to the Commissioner for further development is ordered. *See Graham*, 129 F.3d at 1423. In considering whether a remand is required, the court should be guided by whether there are evidentiary gaps in the record that result in unfairness or clear prejudice. *Id*. Here, after review of the decision in light of the medical record before the ALJ, I can find no error in the ALJ's failure to order another consultative evaluation nor in his conclusion concerning Plaintiff's mental health.

Insofar as Plaintiff urges that the ALJ's decision was entered in defiance of the Appeals Council's remand order, that claim was expressly addressed by the Appeals Council and rejected. Thus, in response to the Plaintiff's request for review of the second adverse decision, the Appeals Council noted counsel's complaints and found that "[Plaintiff] was questioned about all [her] impairments by both the [ALJ] and [her] representative." After noting that its remand order stated that additional evidence "may include" a consultative examination "if warranted," it found that "[o]ur review of the record does not demonstrate that, contrary to the [ALJ's] determination, a consultative examination was in fact warranted." (R. 13). Plaintiff demonstrates no reason why this court should reconsider that determination by the Appeals Council.

Insofar as Plaintiff argues this in terms of a failure to fully and fairly develop the record, Plaintiff wholly fails to demonstrate that on this appeal. Equally significant, Plaintiff fails to demonstrate any prejudice for the alleged lack of record development. Thus, under the applicable standard a remand for further evidence is not warranted.

As the decision reflects (R. 28), in addressing Plaintiff's mental health record, the ALJ cited findings from several doctors, including the "tentative" diagnosis by Dr. K. Batra,

11

M.D., in March 2001, that Plaintiff suffered from atypical depression and somatoform disorder (R. 1123-24); the February 2002 note from treating neurologist, Dr. A. Pedrigal, M.D., that Plaintiff did not suffer a mental impairment affecting her daily functioning (R. 1373); the report from Dr. C. Walker, M.D., in March 2002, concluding that Plaintiff showed no signs of depression and that she was without any significant psychiatric problem beyond anxiety. By his diagnosis, she suffered only an adjustment disorder (R. 1079-81); and the report from Dr. C. Yocum Ph.D., in June 2002, diagnosing Plaintiff with Adjustment Disorder with depressed mood, mild (R. 1396). By this psychologist's conclusion, Plaintiff showed only "mild symptoms of depression" that were most likely related to adjusting to her medical problems. (R. 1397).

In weighing this opinion evidence, the ALJ found Dr. Yocum's conclusions that Plaintiff suffered only mild symptoms of depression to be the most consistent with the clinical and laboratory evidence and entitled to controlling weight. (R. 32-33). In so doing, the ALJ addressed the somatoform disorder issue: "[s]pecifically, [Dr. Yocum's] findings concluded that the claimant did not have a somatoform disorder but an adjustment disorder and a mildly depressed mood." *Id.* The ALJ also credited the opinions from Dr. Walker "who determined that he did not see any significant psychiatric problems." *Id.* On the basis of these opinions, the ALJ concluded Plaintiff suffered only mild restrictions of activities of daily living, occasional difficulties in maintaining social functioning and in maintaining concentration, persistence or pace. He further noted that later psychological evaluations had not endorsed a somatoform disorder. *Id.* Plaintiff does not challenge these findings on this appeal and makes no demonstration that such are unsupported by substantial evidence. More

12

significantly, Plaintiff makes no showing that such mental health record was inadequate to permit an informed decision without the necessity of obtaining another consultative evaluation. In sum, Plaintiff is not entitled to relief on these claims.

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, and I recommend that it be affirmed. I further recommend that the Clerk be directed to enter Judgment in favor of the Defendant and to close the file.

Respectfully submitted this
27th day of April 2010.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R. Civ. P. 6; M.D. Fla. R. 4.20.

Copies furnished to:
The Honorable Steven D. Merryday, United States District Judge
Counsel of Record